Kelly vs Dickinson et al.

---

KELLY, RESPONDENT, vs. DICKINSON, ET AL. APPELLANTS.

1. The captain of a boat, as such, has no right to sell the boat or any part thereof, without special authority therefor from the owners. He may grant the privilege of keeping a bar, so long as he is concerned with the boat, but, in such case, the bar-keeper is on the same footing with others engaged in her service, and must be under the supervision intrusted to the captain, for the benefit of all, who are interested in the boat.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

In this case the petition sets forth, that in the spring of the year 1848, defendants were owners of the steamboat Princeton, and that plaintiff contracted with them for the sale of

13

the bar of the boat to him; that they agreed to sell the bar to him for the sum of one thousand dollars, and that; they agreed to give him a valid bill of sale for the bar upon the payment of this sum. That it was agreed that plaintiff should pay this sum from time to time as he could make the money; and in the mean time he was put in possession and paid five hundred and ninety-two dollars on account of the price of the bar. That afterwards, without notice to him, the defendants sold the boat, bar and all to a third person, and put the purchaser in possession, and refused to complete their contract with him or refund the money he had advanced on account of it. Of which breach of contract plaintiff complained, and asked judgment. The petition sought to set up, that the bar appreciated after its purchase, and consequently, the measure of damages was a larger sum than he had paid, with interest; but the evidence did not sustain this allegation, and plaintiff abandoned all claims, except for the return of his money and interest from the time of the rescision of the contract.

The defendants denied that they were owner of the Princeton at the time the plaintiff claimed to have purchased the?bar. That they were only mortgagees of three-fourths of said boat, and that it was not until afterwards, in October 1849, that they acquired any intertest in said boat, except as mortgagees; that in October, 1849, they purchased from the mortgagor one quarter of the boat, and still retain that interest in it; that the mortgagor sold to the party named in the petition, but they did not, and they deny that they ever contracted with Kelly; and say that if their mortgagor did, his acts do not bind them.

Upon these issues the partis went to trial. The plaintiff offered evidence, tending to prove that Darrah and Pomeroy, defendants, were in posession of the books of the steamboat. That they had been served with *subpœna duces tecum* to bring the same into court, but had not done so; and then offered evidence tending to prove that those books, kept by the agents of the owners of the steamboat, credited him with $592, paid during the spring and summer of 1849, on account of the sale and purchase of the bar. That during that time defendants controlled the management of the boat, and were the reputed owners of her, receiving a share of the profits, calling for balance sheets, showing them to be entitled to the profits as owners; appointing officers, and doing other acts of ownership.

The defendants objected and excepted to that part of this evidence which went to prove the contents of the books of the Princeton, but the court overruled these objections, and they duly excepted.

The plaintiff then offered evidence, tending to prove, that plaintiff asked the defendants to give him a bill of sale for the bar, he offering to complete payment therefor; that the plaintiff had demanded possession of the bar, after the sale thereof to Ealer, and that all of the defendants refused him redress, and that Ealer removed him from the boat with the concurrence of defendants and by their direction; and here the plaintiff closed.

The defendant offered in evidence a copy of the enrollment of the steamboat, without stating for what object. The plaintiff objected to its being read in evidence, and the court sustained the objection; the defendants excepted.

The defendants then produced and read in evidence a bill of sale from Dickinson to Darrah and Pomeroy, dated Nov. 10th, 1849, and conveying to them one-fourth of the steamboat, for the sum of five thousand seven hundred dollars, which bill of sale recited the rejected enrollment.

Defendant then read in evidence a mortgage from Dickinson to Darrah and Pomeroy of three-fourths of the boat to secure $7274 37, dated 24th November, 1847. The sum of $7,274 37 was divided into three instalments, whereof $2,000 were due in six months, $2,637 16 in nine months and $2,631 16 in twelve months from the date of the mortgage, with interest from the 24th November, 1847.

Defendant gave evidence, tending to show that Dickinson, about the time of the sale to defendants, in 1849, sold to Ealer one-half of the steamboat, and that the sale was made by consent of defendants. The money was paid by Ealer to Webster, agent, of Dickinson and defendants, but the witness did not know whether the money went to defendants or to Dickinson; it might have gone to defendants, and here defendants closed. A witness recalled by plaintiff testified that he has heard Darrah, one of the defendants say, that Kelly claimed to have bought and partly paid

Kelly vs. Dickinson. et al.

for the bar of the boat, but that he, Darrah, did not believe that Kelly had paid one cent. That when Ealer told Kelly to take his fixtures off the boat or sell them. Kelly went off without difficulty; but he claimed to have bought the bar and paid in part for it, to which Ealer replied that he had bought the boat, free and clear without reservation.

And this was all the answer in the cause. At the instance of the plaintiff the court gave the following instruction:

If Darrah and Pomeroy were mortgagees, in possession of said boat, the debt secured by the mortgage having become due, their title becomes absolute, and they are to be regarded as owners from the time such debt became due and remained unpaid.

And at the instance of the defendants the court gave the following instructions:

1st. If defendants have not since sold any part of the said steamboat, which belonged to them at the time of said alleged purchase of the bar, and have exercised no authority over the plaintiff's property on said boat; if any, then the plaintiff cannot recover against them in this action.

2nd. The defendants are not liable in this action for wrongful acts, if any, which the jury may deem to have been done by Ealer (the purchaser from Dickinson) without the concurrance or procurement of defendants.

3rd. If Darrah and Pomeroy, at the date of the alleged contract with the plaintiff, were merely mortgagees of an interest in said boat, and held no interest therein, except as mortgagees the jury will find for the defendants.

4th. If the jury believe from the evidence that a contract was made as alleged by the plaintiff in his petition, nevertheless, if the plaintiff had not been disturbed in his possession by the defendants, but has continued in the possession and enjoyment of said bar, or has voluntarily surrendered the same or abandoned it without the agency of the said defendants, then they will find for the defendants.

The defendants then prayed the following instruction which the court refused, defendants excepting:

5. A captain of a steamboat has not the power to sell the boat or any part thereof, without special authority therefor from the owners (except to the extent of his own interest therein) and any contract sale of the interests of other partners of the steamboat made by the master and without the authority or ratification of the partners sought to be charged, does not bind such part owners.

And the court gave the following instruction of its own motion:

6th. A captain of a steamboat has not the power to sell any right or interest of the owners thereof, in the use or enjoyment of said boat or any part thereof (except to the extent of his own ownership,) for a longer period than he is employed as captain, without special authority from the other partners of such boat, and any contract of sale of the interest of the other part owners made by the master, without the authority or ratification of the other partners does not bind them: but if they assent thereto, or ratify such contract, then they are bound therefor. Nor can he sell any such right or interest of the other partners, for the time he is employed as captain, unless the jury are satisfied from the evidence, that there is a custom to that effect, of such long standing and so generally known among those connected with steamboats, that every person dealing with them would be likely to know of its existence and act in reference thereto.

There was a verdict for plaintiff for just the sum actually paid on account of the bar by plaintiff, and interest thereon from the time of his dispossession to the day of trial.

There was a motion for a new trial for the reasons that the court gave improper and refused proper instructions, excluded proper and admitted improper evidence, and that the verdict was against law and evidence. This motion being overruled, defendants appealed to this court.

## KASSON, for appellants.

1. The instruction as read by the plaintiff is erroneous. It was given on the strength of Robertson vs. Campbell, 8 Mo. R. 615, which was a very different case. There the mortgagee had con-

sidered the mortgager's title as extinct, and after notice to the mortgager had actually sold the property as absolute owner. Here, on the contrary, both parties considered the mortgage as still in existence, the mortgager was still in possession, afterwards paid the mortgage debt, and sold and conveyed his whole interest, two-thirds of it to Ealer and one-third to the mortgagees. At the suggestion of an entire stranger, the instruction forced the mortgagees into the position of absolute owners, directly in the face of the acts of both parties to the mortgage, who openly and publicly treated it as still in force. It provided also, for doing it by an exercise of a power to sell, which was never availed of.

No case has ever carried the doctrine so far as this, and we think it contrary to the law. See R. S. 1845, "Mortgages" section 21. Besides, there is no evidence that Darrah and Pomeroy were in possession under their mortgage.

2. The instruction asked for and refused to the defendants was good law and ought to have been given.

The master has no right to sell any interest in the boat belonging to other owners, except in a case of necessity, which this is not pretended to have been. The owners ought to have acted in person: Per. Lord Ellenboro; Hayman vs. Moulton, 5 Esp. 65.

1 : Is doubtful if he can sell, in any case, in the home country, where the owners could be consulted: Scull vs. Briddee, 2 Wash. Cir. R. 150 and generally; Abbot on shipping 1. (note.)

3. If he took any title without a bill of sale: (Abbot on ship. ut sup.) and was in possession, then he could have kept possession; and he surredered it voluntarily, if at all.

4. Under the first instruction, the verdict should have been for the defendants. There is literally no evidence, that Darrah and Pomeroy sold any fraction of the boat to any body. Dickinson alone made the sale complained of. The jury were clearly misled by the appearance of Dickinson's name as defendant, though the suit was then dismissed as to him. It is in this respect such a mistake as occurred in Swan vs. Hyde, IX. Mo. 849, (last clause of opinion.) It was Dickinson's act alone.

5. Under the second instruction the defendants were entitled to the verdict. There is an entire want of evidence charging the defendants with the procuration of, or concurrence in the alleged ejection of the plaintiff. The same mistake must have occurred as under the first instruction. The verdict was against the law as given to the jury.

6. The hypothesis of the third (defendant's) instruction was fully supported by the evidence. The only interest held by the defendants was that of mortgages, both at the time of the alleged contract, and of alleged sale. See the 1st point above, and R. S. "Mortg." section 21.

7. The plaintiff failed to show any agency of these defendants in disturbing Kelly's possession. It was the naked act of Ealer, the purchaser from Dickinson, without the procurement, consent or concurrence of any other person, or even the knowledge of any other person, so far as appears. Their verdict was in this particular against the fourth instruction given for the defendants. It calls for the same action of this court, as the case of Hartt vs. Leavenworth, XI Mo. 630.

8th. The instruction given by the court declares the allegea sale (being for longer than Dickinson was employed as captain, as the plaintiff alleged) invalid, unless it was done with the "assent or ratification" of the other part-owners.

No such assent or ratification of these defendants was proved. The finding was contrary to the law thus laid down by the court of its own motion.

9th. The allegations of the petition are not sustained by the evidence. No sale was made as there alleged by the defendants against whom judgment was finally rendered: Merle & Co. vs. Hascalle, X Mo., 409.

In the case last cited the court say: "A party will not be tolerated in alleging one state of facts, as the ground upon which he seeks a recovery and proving other and different facts and having his verdict and judgment. It is a violation of every principle of pleading, and may work the most serious injury to the defendant. It would not only operate as a surprise, but would tend to mislead the party by the statement of facts not intended to be relied upon on the rial, but wholly and entirely different." And further to the same point, (q. v.)

Finally: There is clearly a mistake here, in compairing the law and the evidence with the

verdict of the jury. It can only be accounted for by supposing the jury to have been misled by the applying to these two defendants the evidence which would have justified a verdict only against Dickinson. A serious wrong has been done to these defendants. Whatever may be thought of the plaintiffs' instruction, it seems clear that the finding was contrary to the law as contained in the defendants' instructions, and improper under the averments of the pleadings.

We therefore pray this court in the exercise of its sound discretion and for the furtherance of justice, to grant a new trial.

GANTT, for respondent.

1. The verdict is well warranted by the evidence and does but bare justice to the plaintiff.

2. The court admitted no illegal testimony. The books of the steamboat were called for and were shown to be in the hands of defendants. They did not produce them. Secondary evidence of their conduct thereupon became admissible.

3. The count excluded no legal testimony. The copy of the enrollment offered in evidence, is allowed to prove *prima facie* the ownership of a boat against the persons named therein. It is no evidence for them to exclude the idea of there being other part-owners. See "an act concerning evidences," approved March 12, 1849, p. 51, session acts of '48-9. But for this act it would be no evidence of ownership: XIV John R., 201, 15 John 302 and case cited.

4. The only instruction the refusal of which is complained of, is the fifth asked for by defendants; and anything which could benefit the defendants in this instruction was contained in the instruction which the court gave of its own motion, viz: The sixth of this refusal, then the defendants cannot complain.

5 There was but one instruction asked for by the plaintiff: to this defendant did not object or except to at the time. It is too late to raise the objection, or the motion for a new trial.

But the instruction is good law: Robinson vs. Campbell, 8 Mo. Rep. 365, and cases there cited.

Wherefore appellee submits that the judgment of the court below should be affirmed.

SCOTT, J., delivered the opinion of the court.

This seems a very hard case, when it is considered that Darrah & Pomeroy are the only parties against whom a judgment has been rendered. Dickinson, who really wronged the plaintiff, is now no longer a party to the record. The case of Robinson vs. Campbell, 8 Mo. Rep., 365, is not applicable. That case only declared the strict rights of a mortgagee of personal property after a forfeiture, if he saw proper to assert those rights against a mortgagor. The question then is, who was the owner of the boat in the sense that would make him liable for the acts of his agent, the captain? Dickinson, the morgagor, who was in possession of the boat and commanded her, and who made the contract with the plaintiff Kelly; or Darrah & Pomeroy, who were the mortgagees; entitled to a portion of the profits of the boat in discharge of their mortgage debt, taking a concern in her well doing on that account, and receiving a statement of her earnings? Without, however, going

further into the matter, we are of opinion, that the court erred in refusing that instruction, asked by the defendants, which declared that the captain of a boat, as such, has no right to sell the boat or any part thereof, without special authority therefor from the owners.   The instructions given did not supercede the necessity of giving this one.   The evidence, as it appears on the record, clearly shows, that the captain, as such, by no usage or custom was authorized to sell the bar of a boat so as to give to the vendee an interest in the boat itself as part owner. Such a usage would be unreasonable, nor is it a power necessary to the captain in the discharge of his duties to the owner.   It might be a great injury to a boat that a bar keeper had a permanent interest in her, so that he could not be controlled by the owner.   It would be in his power to destroy her reputation as a passenger boat and there would be no remedy.   The captain, as such, may employ a bar-keeper, or grant the privilege of keeping a bar, so long as he is concerned with the boat. But in such cases, the bar-keeper is on the footing of others engaged in her service, and must be under that supervision, entrusted to the captain for the benefit of all who are interested in the boat.   This is a sufficient quantum of power to the captain, to enable him to discharge his duties to his employers, and it would be unsafe to the owners to countenance the exercise of any authority by the captain, which is not necessary to a full performance of the duties imposed on him.

The other judges concurring, the judgment is reversed and the cause remanded.